UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

ANTHONY CALVIT, ET AL

-vs-

WAL-MART STORES INC.

CASE NO.  21-cv-4296

JUDGE DEE D. DRELL

MAG. JUDGE PEREZ-MONTES

MEMORANDUM RULING

Before the court is a motion for summary judgment filed by defendant Wal-Mart Inc. in the above captioned personal injury suit.  For the reasons explained herein, the motion for summary judgment will be GRANTED in full, dismissing all claims asserted by plaintiffs.

Background

On or about March 5, 2021, Anthony Calvit alleges he was pushing a shopping cart in the Wal-Mart parking lot in Vidalia, Louisiana when, "suddenly and without warning," the front wheel fell into a "pothole." (Doc. 1-2).  According to the petition, the shopping cart stopped abruptly, and Mr. Calvit's body hit it, causing his right shoe to slip off.  Mr. Calvit's bare foot landed on the pavement in what he described as debris.

Mr. Calvit left the premises unaware that he had stepped on anything potentially dangerous. Two days later his foot began hurting.  He says he squeezed on his foot where it was tender and extracted a "really small" piece of glass and a small splinter.[1]  (Id.).  According to Mr. Calvit, his foot became infected, and within two months, he had to undergo the amputation of his right leg.

---

[1] Mr. Calvit described the size of the glass and the splinter to be about the size of the point of a writing pen.  (Doc. 36-4, p. 17).

Mr. Calvit did not report the parking lot incident or his discovery of the glass and splinter in his foot to Wal-Mart until April 27, 2021, more than a month after the alleged incident.

Mr. Calvit filed suit in the 7th Judicial District Court, Parish of Concordia, State of Louisiana on August 18, 2021.  In his state court petition, Mr. Calvit claimed Wal-Mart breached the duties it owed him as a patron pursuant to the merchant premises liability statute, La. R.S. 9:2800.6. (Doc. 1-2).  Mr. Calvit sought damages for severe bodily injury and emotional distress that he suffered as a result of this incident, including, but not limited to, infections, amputation, and depression.  Kendra and Kenadie Calvit,[2] also plaintiffs to the lawsuit, claimed loss of consortium and loss of love and affection.

Wal-Mart removed the suit to this court on December 14, 2021 and filed the instant motion for summary judgment on March 31, 2023. (Doc. 26).  Plaintiffs filed their opposition (Doc. 38) and Wal-Mart filed its reply (Doc. 39).  Accordingly,  the matter is ripe for consideration.

<u>Summary Judgment Standard</u>

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute of material fact is genuine if evidence is such that a reasonable jury could return a verdict for the nonmoving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). We consider "all evidence in the light most favorable to the party resisting the motion." <u>Seacor Holdings, Inc. v. Commonwealth Ins. Co.</u>, 635 F.3d 680 (5th Cir. 2011) (internal citations omitted). It is important to note that the standard for summary judgment is twofold: (1) there is no

---

[2] The Plaintiffs' state court petition name both Kendra and Kenadie Calvit as plaintiffs.  This court's docket sheet does not list Kenadie Calvit as a plaintiff, but the undersigned does not see where she was dismissed from suit.  Out of an abundance of caution, we will consider the motion as though Kenadie Calvit's claims are before the court.

genuine dispute as to any material fact, and (2) the movant is entitled to judgment as a matter of law. Id.

The movant has the burden of pointing to evidence proving there is no genuine dispute as to any material fact, or the absence of evidence supporting the nonmoving party's case. Liberty Lobby, 477 U.S. at 250. The burden shifts to the nonmoving party to come forward with evidence which demonstrates the essential elements of his claim. Id. The nonmoving party must establish the existence of a genuine dispute of material fact for trial by showing the evidence, when viewed in the light most favorable to her, is sufficient to enable a reasonable jury to render a verdict in her favor. Duffy v. Leading Edge Prods., Inc., 44 F.3d 308, 312 (5th Cir. 1995) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 321 (1986)). A party whose claims are challenged by a motion for summary judgment may not rest on the allegations in the complaint and must articulate specific factual allegations which meet his burden of proof. Id. "Conclusory allegations unsupported by concrete and particular facts will not prevent an award of summary judgment." Duffy, 44 F.2d at 312 (citing Liberty Lobby, 477 U.S. at 247).

<u>Analysis</u>

The law applicable to merchant premises liability matters, such as the one before the court, is found in Louisiana Revised Statute 9:2800.6. Section A of the statute explains that "[a] merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. The duty includes a reasonable effort to keep the premises free of any hazardous conditions which might reasonably give rise to damage." La.R.S. 9:2800.6(A). Section B of the same statute explains that a plaintiff who brings a case against the merchant for injury, death or loss sustained because of a fall due to a condition existing in or on the merchant's premises must prove: (1) the condition presented an unreasonable risk of

harm to the claimant and that risk of harm was reasonably foreseeable; (2) the merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence; and (3) the merchant failed to exercise reasonable care." La. R.S. 9:2800.6(B).  Failure to prove any one of these factors is fatal to a plaintiff's case.  White v. Wal-Mart Stores, Inc., 699 So.2d 1081 (La.1997).

Plaintiffs' evidence in support of his claims for premises liability consists of pictures of the area where Mr. Calvit claims he was injured, Mr. Calvit's deposition testimony, the affidavit of his mother, Mable Lee Calvit, and his expert witness' report.

Mr. Calvit's deposition testimony is unhelpful.  Although he claims that the entire wheel of his shopping cart fell into the pothole, he could not describe the pothole with any particularity.

Mr. Calvit's mother swore in her affidavit that she saw the pothole on two separate dates: the date of the accident and on a return trip to Wal-Mart on May 1, 2021.  Details about the pothole were not provided.  Ms. Calvit also stated that when she returned to Wal-Mart on May 18, 2021 to take pictures of the area, the pothole had been filled.

Plaintiffs' expert witness, Neal Johnson, a professional architect and forensic consultant, prepared a report in which he opined that Wal-Mart breached its duty to provide a reasonably safe premises and prevent fall-type accidents.  In support, Mr. Johnson stated "the incident occurred at an area of the parking lot that had cracks, crevices, and unusual coating material that [had] also been allowed to accumulate debris, all of which contributed to his fall and injury."  (Doc. 38-6, p.8).  Additionally, he stated:

> At the location of the accident, we observed severely deteriorated asphalt containing a unique light brown colored finish [as seen in photograph 4].  The failure of the surface appeared to be possibly a settlement or failure of pavement base located directly beneath the pavement.  The condition could easily have been repaired by removing the deteriorated pavement panel, replacing, and compacting the subbase material properly, and installing new pavement.

(Doc. 38-6, p.10).

Mr. Neal's opinion is directly contradicted by Wal-Mart's expert witness, Frank J. "Jeff" Raley, a civil engineer with a certification in investigative and forensic engineering. Mr. Raley actually visited the site and evaluated the spot where Mr. Calvit claimed a pothole existed. Mr. Raley took measurements and pictures and collected a sample of the purported pavement patch. Ultimately, Mr. Raley concluded that there was no evidence of a pavement patch in the specified area nor any evidence of a pothole or pothole repair in the surrounding area.

Mr. Raley's conclusion was supported by the lab analysis of the sample of discolored material he collected with a paint scraper. That analysis revealed that the discolored material was water based acrylic paint. Mr. Raley stated this type of material was inconsistent with the proper patching material for asphaltic pavement. Additionally, Mr. Raley took measurements of the spot in question and determined that there was no true deviation in the pavement height as it existed with the paint spill.

Wal-Mart also produced the declaration of Charles Waters, the Asset Protection Manager for Wal-Mart in Vidalia, Louisiana. Mr. Waters stated that he was not personally aware of any potholes in the area where the accident was said to have occurred, he had no knowledge of any pavement repairs in that area, and he lacked knowledge of any accidents in that area. In fact, he had no knowledge of any pavement repairs being performed in the parking lot from March 1, 2021 through  March 29, 2023.

Mr. Waters also reviewed Wal-Mart's records pertaining to parking lot repairs and accident claim reports for the three-years prior. Mr. Waters saw no mention of a pothole, paving defect, and/or repair in the area. Mr. Waters also noted that he noticed only "minor paving defects" when

5

he walked the parking lot after Mr. Calvit contacted him about the accident on April 27, 2021.
(Doc. 36-5, p. 2).

In light of the record evidence, we do not find that a pothole existed in the spot where Mr.
Calvit had his accident.  In their "Responses to Statement of Material Facts As To Which There
Are No Genuine Issue To Be Tried," Plaintiffs admit: Mr. Calvit claimed the incident occurred in
the area of the parking lot that contained the discolored material; the discolored material was water
based acrylic paint; water based acrylic paint is not used for patching asphaltic pavement; and
there are no signed of a pavement patch in the area of the accident.  (Doc. 38-2).  Although
Plaintiffs argue that their photographs show a repair had been made to pavement in the same
general area, Mr. Calvit specified that his accident occurred where the paint was spilled.  Thus,
other repairs (if any) are not material to this case.  The Plaintiffs' admissions taken with the
statements made by Mr. Raley and Mr. Waters in their declarations lead the court to the conclusion
that Plaintiffs cannot prove that a dangerous condition existed much less that the condition of the
area presented an unreasonable risk of harm that was reasonably foreseeable.

Plaintiffs also failed to carry their burden of proving that Wal-Mart either created or had
actual or constructive notice of the condition of the parking lot.  Not only did the Plaintiffs fail to
provide any evidence that Wal-Mart created the hazard or had notice of its existence, but Mr. Calvit
own deposition testimony confirms he had no knowledge of whether Wal-Mart knew that: a
pothole existed, a piece of glass and/or splinter were on the ground, and/or a Wal-Mart employee
placed the glass or splinter in the parking lot.  Accordingly, Plaintiffs cannot prove the second
element of their claim for premises liability.

Finally, Plaintiffs did not present evidence that Wal-Mart had a duty to exercise reasonable
care in this situation.  Without a pothole or notice of a dangerous condition, there was no reason

for Wal-Mart to protect Mr. Calvit from this accident.  Accordingly, the Plaintiffs cannot carry their burden of proof at trial.

Even if the evidence presented in this case created a genuine dispute of material fact, a risk-utility analysis of the parking lot conditions weighs against a finding that the condition of the parking lot posed an unreasonable risk of harm.  "[T]he trier of fact must balance the gravity of the risk of harm against the individual and societal rights and obligations, the social utility, and the cost and feasibility of repair.  Simply put: The trier of fact must decide whether the social value and utility of the hazard outweigh, and thus justify, its potential harm to others."  Reed v. Wal-Mart, 708 So.2d 362, 365 (La. 1998).  Accordingly, in cases such as this, the court considers four factors: (1) the utility of the complained-of condition; (2) the likelihood and magnitude of harm, including the obviousness and apparentness of the condition; (3) the cost of preventing the harm; and (4) the nature of the plaintiff's activities in term of social utility or whether the activities were dangerous by nature.  Pitre v. Louisiana Tech University, 673 So.2d 585, 591-93 (La.1996).

The utility of a parking lot is not at issue as a paved parking lot is preferable and presents fewer potential defects than an unpaved parking lot.  With respect to whether the pothole was open and obvious, we first note the conclusion that a pothole didn't exist.  Even if somehow the spilled paint was uneven and caused Mr. Calvit's shopping cart to stop, as stated in Reed,                                         .

> It is common for the surfaces of streets, sidewalks, and parking lots to be irregular.
> It is not the duty of the party having garde of the same to eliminate all variation in
> elevations existing along the countless cracks, seams, joints, and curbs.  These
> surfaces are not required to be smooth and lacking of deviations, and indeed, such
> a requirement would be impossible to meet.  Rather, a party may only be held liable
> for those defects which present an unreasonable risk of harm.

Id. at 363.  We do not find that the spilled paint presented an unreasonable risk of harm as it was fairly even with the pavement.  Even Plaintiffs' own expert stated that a difference in elevation of less than a ¼ of an inch was not problematic.  We also find that it would be disingenuous for Mr.

Calvit to argue that the alleged defect was not open and obvious when he was not paying attention to the path he travelled.  During his deposition he stated he was looking right at a truck that was backing up.  A pothole that would trap the entire wheel of a shopping cart, if it had existed, would certainly have been open and obvious to someone who was paying attention. As to the utility of the parking lot and the cost of maintaining the area, we rely again on Reed, in which the Louisiana Supreme Court concluded, that based upon prior case law and life experience, maintaining a parking lot in such a way that would eliminate defects would be cost prohibitive.  Id. at 366.

Conclusion

In light of the foregoing, Wal-Mart's motion for summary judgment (Doc. 36) will be GRANTED in full.  Mr. Calvit cannot carry his burden of proving that Wal-Mart breached any duty it owed him as a patron under the Louisiana merchant premises liability statute.  Because Mr. Calvit's claims fail as a matter of law, so do the claims of Kendra and Kenadie Calvit for loss of consortium and loss of love and affection.

A judgment in conformity with this finding will issue.

SIGNED at Alexandria, Louisiana this 7ᵗʰ day of August 2023.


DEE D. DRELL, SENIOR JUDGE
UNITED STATES DISTRICT COURT